Page number 20-1516. Fast Food Workers Committee and Service Employees International Union Petitioners v. National Labor Relations Board. Mr. West for the petitioners, Mr. Haller for the respondents, Mr. Shaw for the respondent intervener. Please support it. Thank you. Council for. Council for petitioners. Together with Michael element, representing petitioners. Would you like to start your argument? May it please the court. This case began in 2014 with a complaint filed by the NLRB general counsel. Against McDonald's Corporation and many of its franchisees. Alleging widespread unfair labor practice, unfair labor practices on a nationwide scale. In opposition to a union organizing campaign, these were not alleged to be individual actions taken by the individual franchisees, but rather part of a coordinated effort by McDonald's directing the activities of its franchisees on a system wide basis. So, council, since your time is limited, why don't we get hone in on the critical issues here? And the argument is. Made by opposing counsel that some of your arguments are not properly before the court. Because you never gave proper notice. That you were appealing certain matters. I'm sorry, I'm having a little trouble hearing at the beginning. You're talking about. Whether the recusal issue is properly before the court. Your honor, I think the, there are 2 answers to that. Number 1, the, the appeal of the, the raising the issue of the, the, the board's refusal to reopen the hearing certainly was was properly brought before the court in that. The, the, the board's order was attached to the notice of appeal. And the, I think the other point to be made with respect to whether this is properly before the court. Is that the, you can't just include an order. We've said over and over again, you have to explain why you're challenging. That's it doesn't work. Just put it. I appreciate that. I believe there may have been some ambiguity. In the, in the notice of appeal, but the, the, the scope. Of what was being brought before the court certainly was made clear by the, by the fact that the, that this document was attached. Well, references both, and for some reason, whoever filed the talked about the original decision. And then in response to was a petition to re, hearing filed. Yes. And what happened? And then you cite the re, hearing denial. All right, so then you acknowledge that when your statement about issues to be. Raise you didn't specifically mentioned. 2nd, denial and then. In your opening brief, of course, that's your, your 1st argument to this court. So, your argument as I understand it is under our decision in Cinderella. We have jurisdiction somebody talking. We have jurisdiction. To consider this issue. Now, you know, if your counsel are going to. Counsel are going to say, so this is your chance to respond if you want to. I apologize your honor. I wasn't clear on whether you were finished with your question. Your honor, what I would say is. We think we've addressed in the brief the reasons why the issue is properly before the court. To the extent that's not persuasive, I'm prepared to go on and discuss. What I think are more important arguments, namely, with respect to why the, the board abused its discretion. In the administrative law judge. Well, you know, that interveners brief goes on and on and on. About why the recusal issue is not before this court. You think your response. There are 2, there are 2 points judge Rogers. Number 1, the argument that there's 1 argument that. The motion to reopen the record is not before the court and that's what I understand. As to have been discussing just now, even if that argument is correct. The contention that a member manuals refusal to to recuse himself. It's not before the court, I think has no merit because what is before the court. Is the board's quarter. Accepting the settlement and approving the settlement. And that order was signed by judge, excuse me, a member manual. In fact, he provided the deciding vote on that and the question is whether that. Order is proper, given the fact that 1 of the members who cast the deciding vote should not have been sitting. What is your theory of law? That supports that argument well, judge, I know this is not an exact analogy, but I think it's, I think it's somewhat comparable to the recess appointment. Basis where the, the Supreme Court. I was willing to say that you have this whole whole range of cases decided by the board that are essentially null and void because somebody participated on the decision that who should not have. Is that a due process violation? I'm sorry, is that a due process violation having a disqualified member decide a case? Well, I think I think. I think it's perhaps a due process violation and perhaps also a. A fact that it's a decision that. That has has no way is null and void because it was, it was void. I mean, we decided last year and another case involving the surface transportation. That individual opinions or status or individual opinions of. Members of a mission of board are not. Reviewable that only the decisions of the board are reviewable. Yes. Now, as my colleague points out. If there are an individual is behave behave in a certain fashion. As you reflect an incredible bias. The argument then would be a violation of due process. That is not as I see taken up as arbitrary and. Which simply means the decision of the agency. As is unreasonable, but that would be. I think, as my colleague points out, you would have to make a constitutional due process. You didn't do that. We did not do that. Not on a field. But do you concede the premise of his question? The premise being that that it's a due process. Yes, but violation, whether there is, as you're pointing out to someone, whether there is a due process violation or not, you're correct that we have not argued that. I thought in one of our cases that I'll get the name of it. We had said that a decision by an unbiased board. That a litigant has a right to a decision by. An unbiased decision maker. That's correct. A question here. It seems to me. And I want to ask counsel for the board. If you can explain this a little bit to me of how recusals work before the board. Because 1 of the questions I had in my own mind after you filed their motion to reopen. And as you point out your motion for recusal was pending. Didn't the member at issue. No, what was on his recusal list. Because his statement. Does not deny that in any way. He simply says. He didn't represent anyone. In the administrative proceeding. Here, but that is not the only question under the board. And the federal ethics standard that applies here. And under the board's regulation, there's that 3rd prong. About conduct that. Could reasonably give rise to an observer. All right, so that the person wasn't coming to the case. With an open mind, I don't see that having been addressed. But we certainly, we certainly argued in our brief that that address anywhere by the member individually, much less. You know, by the board and to the extent the board didn't have to say anything, although it had that long footnote to. In its opinion, yes, I agree that that was not addressed and I think the. You know, this is almost like, if I could suggest an analogy, if you could imagine. 2 parties that are that have a business partnership and go sour and they break up 1 of them. Then later sues the other and it turns out that the judge who was appointed to hear the case. At the time of the partnership and had been involved in giving legal advice to the defendant. And his statement as to why he doesn't have to recuse himself is because I was not giving legal advice. To anybody to it to a party in this particular litigation, and this is what what judge Emanuel said as to why he was not required to recuse himself. It's because the legal advice that his law firm, his former law firm gave was with respect not to this actual litigation. But to the to the franchisees on the subject matter of this case, not exactly on the election. Exactly. His statement is more limited. It's very carefully worded well, but the, but there, there is a document in the record. I believe it's a joint appendix 15 where we're looking for Mendelsohn explains what it was doing for franchisees and the services it would provide to franchisees and what I'm saying is the judge's statement. Was simply that he hadn't represented any party in the administrative proceeding now before the board. Yes, that's a more limited statement. It doesn't deal with 1 part of the board ethics regulation. Yes, I, I, I agree with you completely judge Rogers and I think that's essentially the heart of the problem here that he really didn't answer the serious questions. And the question then, given that you did have a motion for recusal pending and you filed to reopen and the board said, we're not going to do it so now it's before us and we're going to hear a lot of argument about how it's not before us and you're happy to rest on your briefs. I gather. Why don't you go to the point you wanted to go to the key to the case? Yes, thank you. Jim Silverman. I'll try to be very brief on this, but our central argument here from the clear counsel. It may be central. It may be important and the judges want to hear about it, but you're not waving or abandoning your argument about why the board is not responding. The recusal issue is properly before the court. Are you? No, certainly not. All right, let's get that on. Okay, now, please proceed as judge Silverman requested. Okay. So, our, our argument is that in approving the settlement in reversing the decision of the administrative law judge, the, the board abuse discretion. And we can see that abuse of discretion is the proper standard for this court to evaluate the board's decision, but that the board, in fact, abused its discretion for 2 separate reasons. The 1st was that the, that the board departed from its own precedence, which required it to defer to the administrative law judge without providing any reason explanation why it was doing. So, on and on, didn't it counsel about why it was doing? So it said, agreed with this. We've proposed a rule change or a rule pending. And so, I mean, as, you know, abuse of discretion, the court doesn't have to agree with what he says, but it clearly acknowledged it had this precedent. It clearly acknowledged what its reasoning was. What more did it have to do? Well, our point is that even though the, the board purported to provide an explanation in a footnote, 15 of its opinion, that explanation simply is not tenable because the, the, the board was saying basically that circumstances have changed since the ALJ issued her decision. But with respect to the standard that was going to be applied in deciding the joint employer issue in this case, the circumstances did not change at all with respect to what was in effect at the time the case was filed. I have a prior question, which is why is the standard of review that the board applies to an ALJ decision even the type of thing that is binding on the board? I mean, the board ultimately has the statutory authority. ALJs decide cases only, you know, because they have some delegated authority from the board. They don't have any sort of independent authority to decide settlements. So, so I'm not sure why this should even matter. It seems to me that the board possesses all the statutory authority it needs to make this decision. That's absolutely, absolutely right. Judge Rao, the board has that statutory authority, but the board in a whole range of decisions, and it's fair to say that normally the board will defer to an ALJ on credibility determinations, not policy issues. Well, what the board said in... Isn't that fair? You know, I once practiced labor law. I've taught it for 35 years. I've written a number of opinions. I've never seen a case in which it was actually contested that the board had exceeded its scope of review of the ALJ. This is the first time I've seen it. Well, if it makes any sense at all, it's on credibility questions that the, because the ALJ listens to the testimony, never on policy issues or legal questions. Sure. But what the board said in the Pueblo Sheep Metal Workers case is that its review of the ALJ's decision to accept or reject the proposed settlement is limited to whether the ALJ, and I'm going to quote here, acted arbitrarily or capriciously or otherwise abused her discretion. And I think the problem here, Judge Silverman, is that the board abandoned that standard in this case. It acknowledged that its normal standard was to review... The board, the general counsel wished to test that issue when he brought the complaint. Under a prior general counsel, as you and I know, the board shifts around a lot depending on the membership of the board. Sure. And the new board, actually the board under you that you're challenging, had a different view of that question, which is a fundamental policy, legal policy issue, and they were going to handle it in a different way. So why would, as my colleague suggests, although you might want to defer to ALJs on credibility determination, you're not, the board's not going to ever defer to an ALJ on a major policy question. Well, my first point, Judge Silverman, is that the board, it's not the board that was making the decision here to settle the case. It was the general counsel. And I think what you're certainly correct that when a new board majority comes in, there's frequently a change in policies, a change in emphases, and so forth. That's not at all unusual at the NLRB. When a new general counsel comes in, he or she will have separate new litigation priorities and so forth. What I think is highly unusual in this case is for the general counsel, in his capacity as the prosecutor of this case, to simply abandon what had been begun and had gone on for three years under his predecessor. Isn't that what always happens when there's a settlement, right? There's a, you know? Sure. Isn't that exactly why Biden fired the general counsel? But there's a settlement. The board's law makes very clear, and this is in the board's rules as well, that after the board, after the ALJ has begun to hear evidence, to receive evidence, that any settlement is an adjudicating function, which is subject to her approval. And so here you have not only the ALJ hearing evidence, having heard evidence for three years, what she called the longest case in the history of the NLRB, with hundreds of exhibits, 150 hearing days, and almost finished, only two more witnesses to be heard from. And the new general counsel comes in and says, oh, never mind, we're just going to settle it. Maybe you want to move on to the merits of the board's decision, given that it decided to review the case, not with deference, but de novo. Okay. What are the errors in the board's decision in that respect, in your view? In my view, the central, there are a number of problems that are discussed in our briefs, but the central problem, which I'd like to focus on here, is the fact that under the independent save test, which I think everybody agrees is the applicable standard here, there's a four-part test, but the key issue is whether the settlement was reasonable. And what the general counsel, and this relates to what I was just trying to explain to Judge Silverman, the general counsel, in abandoning the whole issue of attempting to hold McDonald's liable, or at least test whether McDonald's could be held liable as a joint employer, after three years of hearing, with the record virtually complete, that was simply unreasonable. And it was unreasonable also because, as the ALJ explains in her opinion, and I'd refer the court particularly to pages 644 to 46 of the joint appendix, she goes on and talks about the record that had been compiled having copious evidence showing that McDonald's coordinated and directed, on a nationwide basis, the activities of its franchisees in responding to the union campaign. Isn't it fair to say that this joint employer issue is a major policy question that the general counsel was seeking to modify prior board law on? Yes. And the new general counsel said, no, I'm perfectly happy with the old board law. I don't want to change it. Okay, but here's the key, Judge Silverman. And there was a rulemaking. Pardon me? And there was a rulemaking. And there was a rulemaking. So let me get to that in a second. But first of all, in response to Judge Silverman, the standard that the new general counsel was proposing to go back to through the rulemaking was the same standard that had been in existence for determining joint employer status at the time the case was originally filed. So in the rulemaking, there is a reference to, what is it, independent estate. Independent estate, yes. So that signaled, in a way, I suppose, that the board wasn't proposing to abandon that. Is that your point? Well, I don't think they were proposing to abandon that. What they were proposing to abandon was the board's Browning-Ferris decision. We're trying to get to the standard here that you're saying the board didn't follow. And all I was saying is there was this proposed rulemaking, but it didn't abandon independent estate, did it? No. No. I don't think anybody suggests otherwise. So the board was proposing, through this rulemaking, to abandon the broader Browning-Ferris standard that had been adopted by the board in 2015. But this case was brought in 2014 at a time when the standard that the board was proposing to go back to, the narrower pre-2015 standard, was in effect. And that's the standard under which— —on this matter. But here's my position, and here's how I want to proceed, and works with some of the respondents and says, I'm satisfied with this settlement, and submits it to the ALJ. The ALJ doesn't like it. The board is satisfied with it. So what is the court to do? And, I mean, you can think hypothetically, a new assistant, not assistant, but a U.S. attorney comes in, and his predecessor's been spending years on an investigation, and he says, I'm not pursuing it anymore. You know, I'm done with it. I want to settle this matter. So I'm just asking you to focus on—let's just, for purposes of argument, assume that the new general counsel could so proceed. What was wrong with the settlement, either under independent state, since there's no suggestion it's abandoning that, or as a matter of law, or as a matter of firmly established policy, that the board did not propose to abandon? What was wrong with the proposed settlement is that the general counsel no longer had the authority on his own, without agreement of the ALJ, to adopt a settlement. Well, we've been through that. So my question is, and the issue that I had in thinking about this case was, you have the petitioners, and you have the respondents, and you have interveners. And the settlement, as I understand it, did not purport to have the agreement of the petitioners. That's absolutely right, Your Honor. Well, is that a problem or not? Well, it's certainly something that needs to be taken into consideration. Well, the board took it into consideration. I mean, they knew what they were doing. What I'm asking is the cases before us. And normally, when you have a settlement, everybody may not be happy with all of it, but the parties have come together. Here, the charge, not the charging party, but the complaining party, was not amenable. And I thought part of the argument was, well, once you file a complaint with the board, what happens to it is the general counsel's decision, not the complainant's decision. So what's your response to that? Your Honor, we are not arguing that the refusal of the charging parties to agree to the settlement in and of itself made it unreasonable or illegal. But it's certainly a factor that was very important, particularly given where this case was after three years of litigation, and given the terms of the settlement, which basically absolved McDonald's of any liability as a joint employer. What the settlement provided—so I want to emphasize in this regard where we have evidence that the ALJ discussed, in her opinion, showing that McDonald's was coordinating and directing the anti-union efforts that led to these unfair labor practices, you have a settlement that imposes no penalty at all on McDonald's. The only thing that McDonald's were required to do was— Collect the money and pay it out. Collect the money from somebody else and pay it to the board, none of its own money. And if there was any breach of the settlement by any of the franchisees, then McDonald's was required to send out a supplemental notice, but a notice in which McDonald's disclaimed any liability for the franchisees' unfair labor practices, disclaimed any liability for a breach of the settlement agreement, and disclaimed any liability as a joint employer. Isn't it fair to say from the beginning of this proceeding, from the beginning of this chart in this case, the question of the relationship between an owner and franchisees, whether they were joint employer or not, was very much up in the air? Up in the air in the sense of not being resolved? Right. Yeah, that's true. Okay, so you have a new general counsel comes in and says, you know what? Not only do I not want to try to answer that in this case, but after all, there's going to be a rulemaking on this question. But most importantly, put aside the rulemaking. I just don't want to answer it in this case. Well, my response to that, Judge Silverman, is simply that that is not within the general counsel's authority at that point. Why? Because the board's rules say that once the ALJ has started to receive evidence, which she'd been doing for three years in this case, a settlement can be reached only with the agreement of the ALJ. No, no, no, it doesn't say that. It doesn't say that. The ALJ doesn't have a veto. I think that's wrong, Judge Silverman. No, your argument is that her decision is reviewable on abuse of discretion.  But not that she has a veto. She has a veto in the sense that she can veto the settlement as she did, but her veto is reviewable by the board. Oh, okay. I'm sorry. I was not clear on that. And that's a policy call. Well, it's a policy call. Certainly, the board's decision to engage in a rulemaking to try and— No, no, no, even determining whether her position should be supported or not was a policy decision. Well, it was a policy decision for the general counsel, but the determination as to whether the settlement that put into effect that policy decision was reasonable under the independent state standards— But it was up to the board, and the board made a policy call. It made a policy call, but it's not free to just say, this is the policy we want to engage in, therefore we think it's reasonable. Why? Because the board is required to follow and apply its own precedents. And one of the factors would be consistent with a policy call. Well, one of the factors in the independent state is whether the settlement is reasonable, and for all the reasons— And for that, the board thinks it is reasonable, which is a policy decision. What the board said in its footnote 15 is that it was going to depart from its general practice of deferring to the ALJ's decision because of the changed circumstances. And part of my argument here, Judge Silverman, is that the circumstances were not really changed as far as the standard that was going to be applied in determining joint employer as compared to the time the case was begun and what was going to be put in place by the board through its rulemaking proceedings. And even if we assume that that's correct, that that is somehow unreasonable, I think you have said, for the board to decide to make, how is it an abuse of discretion? Because you conceded that our review of the board's decision is abuse of discretion. I mean, if reasonable minds could disagree about, you know, whether there were changed circumstances or the like, then don't we affirm the board? Well, your review is for abuse of discretion, but the board abused its discretion in this case by approving a settlement that was contrary to its standards in independent state. And Judge Rao, let me just say that if you all were to agree with me and hold that the board abused its discretion and send this back to the board, it would not be the first time this court has done that. I would refer you to the oil, chemical, and atomic workers case written by Judge Edwards back in 1986, where the posture of the case was very much the same. The ALJ had rejected a settlement, the board had overruled the ALJ and approved the settlement, and this court found that to be an abuse of discretion and sent it back. Because? Because the board had not explained, and there it was not explaining at all, here it's not explaining satisfactorily its reasons for departing from its precedent. Okay. Why don't we hear from our counsel for respondents? Good afternoon. May it please the court? Joel Heller for the National Labor Relations Board. Hi, Mr. Keller, you heard me mention I was going to ask you about recusal procedures before the board, or rather, let me put it this way. If I were to be appointed to the board, would I be interviewed about my recusal? Would you be interviewed about your recusal? Well, how would the board know what I thought I couldn't, what kinds of cases I could not sit on? Sure. Well, so board members are subject to the two standards we discussed in the brief, the Office of Government Ethics Regs and the Executive Order. That's not my question, counsel. What I'm trying to understand is the brief is written as though the judge here didn't know anything about the statement of recusal involving McDonald's. Is that correct? Or he didn't know about it, and that's why his explanation of why he didn't need to recuse in this particular case was limited as it was. So Member Emanuel consulted with the board's designated agency ethics official in making the recusal determination. That is the process, the internal process for determining recusal obligations of members. And so he did that here, and in consultation with that officer, he decided that he did not need to recuse from this case, and that's the explanation in the board's submission. Okay. But I just want to understand, suppose there was no question at all that the judge, either just before he was appointed or just after he was appointed, said, do not assign me any cases involving McDonald's. Who determines after that what cases the judge may be assigned? Or is that just each and every case up to the individual judge, individual board member? Excuse me. Are you talking about the internal mechanics of how cases are assigned? No, she's asking who would make the decision. Is this decision made by the individual board member? Or I think what my colleague is saying, does the full board as a whole answer the question? I see. So in this case, the recusal motion was addressed to Member Emanuel, and Member Emanuel, individually, in consultation with the agency ethics officer, decided not to recuse in this case. So then that decision was never reviewed or commented on by his colleagues? It was not commented on. I mean, the... Well, he goes on about it for a long time. So he can't say he didn't comment on it, but they acknowledged he had made this decision. Sure. The other members on the case permitted the decision to issue. So in that sense, they were aware of his recusal determination and did not, I suppose, object to it because... There was only one other person on the case, right? And one other board member. Well, there's the defending board member as well, and she talks about it in putting out one of her decision comments on the recusal issue. But the recusal issue is subjected to an abuse of discretion review in this court, and I think it clearly meets that. It's not going to reverse under that standard. So an abuse of discretion, as we and other circuits have held, is not only sort of the judgmental discussion that my colleague was having with Petitioner's Council, but it also involved whether there was an error of law. So when the recusal decision is, I was not representing any party in the case before me, period, but it doesn't say anything about what I may have done when I was working for the law firm that was actively engaged, indisputably, with the underlying facts here of the $15 request and the unionization drive, and yet the board's regulation has three parts to it. And that statement doesn't address the third part. So, Your Honor, there are not separate board regulations on ethics obligations. Yes, there is. You cite it in your brief. Everybody cites it. It's not an issue. In that sense, it is a regulation of the board. These are regulations from the Office of Government Ethics. Those are government-wide ethics obligations. All right. But the board does not deny that it applies to the board. Right. That's what applies to the board. And so I'm saying- And your brief particularly addresses it. Member Emanuel addresses that, those regulations- I'm talking about Section 2635.502A. Right. And that is what is addressed in that footnote, too. In a way, it explains that Littler Mendelson, his former law firm, did not represent a party in the particular proceedings of this case, and that is the- But the regulation has three parts. All right? One is where you have a direct and predictable effect on the financial interests of a member. Or you know a person with whom he has a covered relationship, or represent a party, for that matter. And where the employee determines that the circumstances would cause a reasonable person with knowledge to question his impartiality in the matter. Comma, the employee should not participate unless he has informed the agency designation of the appearance problem and received authorization from the agency designee in accordance with Paragraph D of this section. Right? Yes. Correct, Your Honor. And so that part- There's two parts to it. We're putting aside the financial conflict because no one claims that that's the case. The next part, though, there are two prongs to it. First, that there has to be a former employer, or someone with a covered relationship, in this case a former employer, is or represents a party to this matter. That's one. And two- A person with whom he has a covered relationship. Yes, and that would be a former employer. Or represents a party to such matter. A person with whom he has- It doesn't say or, it says and. It says- No, no, it says or, there's three circumstances. And if you fall within any one of those circumstances, then it says and, where the employee determines blah, blah, blah. Correct. And so, a person with whom he has a covered relationship- So, this is when you're accused. If, one, a person with whom you have a covered relationship is or represents a party. That is not met here, because Littler-Mendelsohn does not represent a party. And then, prong two, and a reasonable person with knowledge of the facts would question your impartiality. Since prong one is not met, you don't have to get to prong two. But even so, Member Emanuel does address in that final paragraph of footnote two, he does say that he does not believe his former affiliation with the law firm would, under de facto, legal, or temporal circumstances here, quote, cause a reasonable person with knowledge of the relevant facts to question his impartiality. Quoting the very language we were reading here. Then, why did the motion to reopen attach this statement saying that he was refused from cases involving McDonald's? So, the motion to reopen, which again is reviewed under an abuse of discretion standard, tries to put in this document here. But as the board explained in its order denying that motion, the document would not require a different result, which is the standard for granting a motion to reopen. It does not change any of the underlying facts about the fact that Litlan Mendelson does not represent a party in this proceeding. It does not engage with the legal analysis that were the basis for the motion to recuse, the OGE regs or the executive order. And it was from well before the motion to recuse was filed, and even longer before the decision issued in this case. Well, but there was a decision to grant a special appeal. Oh, incidentally, what is a special appeal? A special appeal is essentially an interlocutory appeal. Is that defined by an agency regulation somewhere? Yes, it is. But that's what a special appeal is. That's why you need permission to take a special appeal in addition to the board ruling on the merits if it grants permission to take a special appeal. Thank you. You're welcome. And so, right, the decision to recuse was made by a member of manual in consultation with the agency ethics officer. And that is the decision that is under review here. The recusal list that the committee wanted to put into the record comes from a different office within the agency, the executive secretary's office, which is essentially the clerk's office for the board. And even if it was made in consultation with the agency ethics officer, it clearly wasn't for final views on the topic. Because 21 months later, when the recusal decision was actually made, it was clear that a member of manual had consulted with her. We don't know what she talked. He consulted her. All right. She disagreed with him, I suppose, in the consultation. But under the OGE regulations. The point is, it's his decision. It is. It is his decision. All right. All right. So his decision is set forth in the decision here. It is not represented in the document that the committee attempted to put into the record. And that is a high standard for reopening the record. You must show extraordinary circumstances and that it will require a different result. And the board's determination that it would not require a different result is reviewed by this court under abuse of discretion. And so you read covered relationships mean what in the regulations? Yeah. So if you look at the definition section, it looks like rule number four. A covered relationship is any person whom the employee has within the last year served as an employee. So the relevant definition of a covered relationship here is a former employer. A member of manual is a former law firm. Right. And when he voted on the special appeal, how long has he been with the board? The special appeal came out in December 2019. He had been at the board since September 2017. So not quite two years. A little over two years he had been at the board. So September 2017 he came. The decision was issued December 2019. Thank you. Right. But even if there is a covered relationship, it's not with someone who is or represents a party. So there is no refusal obligation here under the OG. There's plain language of the OG grant. So moving, if I may, to the merits of that. I just want to be clear from the board's perspective then. If I am appointed and confirmed as a member of the board, and I have spent my entire life professionally working for law firm A, and I've been involved with all of their significant clients, nevertheless, I, under this regulation, can decide I am not required to recuse because no reasonable person with knowledge of the relevant facts would question my impartiality because I'm not representing anybody who's in the administrative proceeding. It's not about whether you represent someone. It's whether your former employer, your former law firm represents someone. That's why I asked you what a covered relationship was. My covered relationship is I've been working for this law firm forever. And now this law firm is before me in a case involving presumably one of its major clients. And my hypothetical is, you know, I've been a very important member of the law firm all these years, working with all its significant clients. That's all I'm getting at. So, in your hypothetical, is your former law firm is now appearing before you as a board member in a case? No, no, no. I'm sorry to interrupt. My former law firm is in the case before me, before the board. The general counsel complaint makes allegations against my former law firm. So there's no problem, you're telling me, under the Office of Government Ethics Regulation 502? There would not seem to be a problem. If your former firm, I guess, was the charge party in the case, if there was a board case against your former firm, under the OGE regs, that would not by itself be enough to dictate your recusal. Even though the party who was specifically named, maybe these franchisees, operate under an agreement with the client my firm represented while I was with the firm. So the only evidence in the record of Littler Mendelsohn's involvement with McDonald's or its franchisees... With all due respect, we know what's in the record. I mean, your brief says what's in the record. It held the hotline, the franchisees you could call, in connection with unionization and the $15 raise. That is correct. That was their involvement in 2013 and 2014. The recusal motion was filed in 2018. After the complaint. The recusal motion was filed well after the complaint, yes. It was not until the special appeal of the ALJ's rejection of the settlement that the recusal motion was filed. Speaking of the settlement, the board has broad discretion whether to accept the settlement in lieu of further litigation. And the board acted within its discretion in this case to accept the settlement, resolving one of the largest cases in agency history. There is a deferential abuse of discretion standard for such issues, and the committee offers no compelling reasons to upend the resolution of this case. That standard, no compelling reasons? That is our argument, your honor. That's the standard. Oh, sorry, is that the standard? The standard is abuse of discretion. Right. So, determination that the settlement was reasonable is reviewed by this court for an abuse of discretion. And that analysis is informed by two overarching principles. First, the board and the court's longstanding recognition that settlement is a key component of federal labor policy. And second, the fact that all settlements entail compromise. Compromise here didn't get the complainant's consent or agreement. That is correct. That's what's unusual about this settlement of things today. Well, the first prong of the independent stave standard is whether the parties have agreed. The position of the party. And so the board found that that was neutral here because some parties agreed with the settlement and some parties disagreed with the settlement. But the fact that that is part of the – that is a prong of the analysis means that there are going to be some times when some of the parties don't agree. Because if any party could veto a settlement, that would be the end of the story. There wouldn't need to be any other factors. And, of course, the board and courts have long said that one party cannot veto – a charging party cannot veto a settlement agreement on its own. You have to show that this settlement was a reasonable one. And for the reasons we discussed – That's what I'm trying to focus on. All right? Okay. What the complaint alleged. All right? And then a new general counsel comes in, and we've been through – you know, you can change his view on policy. But, nevertheless, even in the notice of proposed rulemaking, on which the board is relying, the new general counsel to the board is relying, independent stave is still the standard. So independent stave is the standard for reviewing a settlement. The rulemaking has nothing to do with settlements. The rulemaking has to do with the – I know, but they cited independent stave favorably. They weren't suggesting they were abandoning that. That's all my point is. It presented it as though it was law, which was agreed. If the rulemaking is finalized, there's nothing in there that says now we no longer apply independent stave standards. The rulemaking has nothing to do with independent stave. Independent stave is the standard for reviewing settlement agreements. Well, I wonder why they cited it. They don't cite it. They do. It's in the notice of proposal. It's in the record. I'm not making this up. You haven't seen it? I don't remember why it would be mentioned. It's in the analysis of why we're doing this, and it goes on with a number of things. Okay. All right, you can have a settlement where basically the complaining parties don't get what they want, and they get a complex system. I understand it now, and tell me if I'm wrong, that the back pay claims have all been, what, resolved? The back pay... And the only question is future finding a violation? Yeah. The settlement agreement provides for 100% of back pay to all of the employees who suffered monetary damages as a result of the alleged violation. Right. Pursuant to the settlement, that money has all been paid, and actually had been paid at the time the settlement agreement was initially introduced. So there's no claim by any employee of one of these franchisees that it's entitled to back pay and it hasn't received it? Correct. They received all of the back pay. Well, my understanding is the way the settlement read, if the allegation wasn't in the complaint, the original complaint that was filed, you couldn't recover. Is that correct? If there were future violations by the franchisees that were the same as those violations alleged in the complaint, the employees would receive a payment out of the settlement fund. So if a franchisee had discharged an employee for engaging in union activity, and that was alleged in the complaint, that employee already got money out of the settlement. But then if, in the future, that same franchisee discharged another employee for engaging in union activity, that employee would receive money out of the settlement fund without need for any further litigation. So I thought what you had to do is you have to file a notice, or you have to file a claim, and that now issues a notice. And then you, the employee, have to file a complaint. Is that not right? If there was a future, if there was another violation. Alleged violation. That's what I'm getting at. If there was a subsequent violation by the same franchisee. Then someone would have to inform the board about this. But then there would be a payout from the settlement fund. Council, you're jumping the gun here. There's an allegation of a violation. There hasn't been any determination yet as to that future violation that there was a violation. And as I understand it, the way you get that after a McDonald's issues the notice is you file a complaint. So, no, under the settlement, the payment from the settlement fund does not require starting over at the beginning and going through the entire board process, filing a charge, a complaint, a hearing, and so on. You look at page 63 of the joint appendix, towards the bottom, that explains, that's one of the settlement agreements, explains how the settlement fund works. So, if a regional director of the board finds that a franchisee has breached the settlement by committing the same type of violation. My point is, the regional director is acting on a complaint filed by the employee. With Fonte doing this, the regional director has to make some findings of fact as to whether there was a violation or not. Just because the employee alleges it doesn't mean there was. I suppose there would have to be some internal investigation. Yeah. In order to determine, right. But once the regional director has made that determination. Right, but I'm just talking about the presence and process on the employee, who after all, we keep hearing this case has been going on for so long, etc. And now everybody wants to get rid of it. But it takes care of back pay. But as to these future allegations, you have to get a decision out of the regional director. So, you have to file a complaint. How else do you get a decision from the regional director? Right. As a matter of fact, under the process of the settlement, yes, you would have to get some kind of determination from the settlement, or from the regional director. But you would not have to go through the entire board process that you would have to if there was a new complaint, a new charge filed. You have to file a complaint that the regional director could resolve. That's my only point. Correct. And that is something that is unique to this settlement agreement. Yes, it is. If you didn't have the settlement, you would just have to start over and go through the entire process. So, there is a benefit to the settlement. Well, I don't think that's the issue here, is it? Because the case could have proceeded absent a settlement. I suppose the new general counsel didn't like the proposed settlement. If the case had proceeded and there had been no settlement, and we went all the way down the line and we got a decision in favor of finding a violation, the order that the board would issue would not include a settlement fund. So, this is something that you get as part of the settlement that you wouldn't get. Well, yes, you don't know. In any rate, if the board issued an order and then the hearing decision on individual claims, the franchisee would have to pay. And the franchisee can negotiate that with McDonnell. That's all I want to get. I mean, in terms of understanding the board's decision that this was a reasonable settlement. Correct. And the settlement fund is one aspect of the settlement, certainly. Overall, the board's determination that this is reasonable is based on the fact that it provides immediate and certain relief to all of the affected employees. It remedies all the alleged violations. It essentially encompasses much of what the litigation on the merits would have done. Well, I understand the back pay is resolved. I wasn't clear that the retaliation claims are resolved. So, there were three types of... You had to go before a regional director, file a complaint and go to the regional director. The retaliation charges in the complaint, or allegations in the complaint, are all resolved by the settlement agreement. All violations are resolved by the settlement agreement. There's money payout, there's notice posting, there's notice mailing, which, again, is something that wouldn't generally be a part of a board order after full litigation. So, that's another... So, the franchisees in McDonald's agreed to pay out money for all these alleged violations? Yes. 100% of back pay for all of the alleged violations. No, back pay is not the same thing as damages for retaliation. And you know that, counsel, better than I do. Back pay is different. But you're telling me all the retaliation claims have been resolved in favor of the employees. And you're saying that's been done through the payment of back pay. Back pay, interest, and what's called the compensation for the consequences of having... Tax consequences of receiving a lump sum. You understand what I'm getting at, don't you? Back pay is one thing. I don't understand what you're getting at. You don't understand the difference between back pay and damages for retaliation? Not under the NRA. Not under the NRA. I'm correct, it's only back pay. It can be both, Judge Silverman. No authority on the board to reward damages. Under current law, there are no compensatory damages, if that's what you're getting. A board order, monetary remedies, is back pay, interest, and the adverse tax consequences that I mentioned before. That's what you get under board law as it currently stands. And that's what the employees got under the settlement. Okay. So the only thing that's outstanding then, taking what Judge Silverman and you just said, is future possible violations that are alleged against the franchisees. I mean, if there are future violations, then... Yes, allegations. That would be the only thing that isn't... Then the board would proceed through contempt. Yes. If there's a breach of the settlement agreement by virtue of there being further violations, then yes. That would then trigger the default proceedings under the settlement agreement, where the board reissues, the general counsel reissues the complaint, and get a default judgment by the board and a consent judgment from the Court of Appeals. And then, of course, the franchisee or McDonald's, as the case may be, would be subject to contempt. Right. So we're back where we were. You've got to file a new complaint. Anyway, counsel, I understand. Thank you, Judge Silverman. Anything further from my colleagues? No. Thank you all. We ask you to... Thank you very much. So, counsel for respondent intervener. Thank you. May it please the Court. Satheek Shah for Intervener, McDonald's, USA. In my limited time, unless the Court prefers otherwise, maybe I'll go straight to what the petitioners call the key issue in their argument here today, which is that the board abused its discretion in approving these now fully consummated settlement agreements just because they did not allow for further development of the joint employer law in the way that they would prefer. As Judge Silverman has said, that is a policy call. But if there is any doubt about whether the ALJ's preference, policy preference as to that call, should trump the judgment of the Senate-confirmed general counsel and the Senate-confirmed board, that doubt has to be resolved in this case by the time of the board's decision. There can be no doubt that the board's decision in this case, whatever the general answer might be, was reasonable because, as the board explained in great detail in its opinion, it had already initiated a formal agency rulemaking to revisit and clarify joint employer law. So, therefore, the ALJ's reasoning, the principal reason the ALJ disapproved these settlements was because the ALJ believed the case should be remanded so it could develop joint employer law. By the time of the board's decision, the board already had a rulemaking pending on that. And, as it turns out, that proposed rule is now a final rule that is in the books that will dictate joint employer law going forward as a prospective matter. Would not the board position be authorized without regard to the rulemaking? Yes, Your Honor. And that's where I started with. Your premise is correct. This is a judgment policy call. The ALJ's policy preference cannot trump that of the general counsel and the board. If the court doesn't want to go that far, but that is the correct answer, you could stop there. If the board wanted to, if this court wanted to instead rely on the typical APA principle, which is as long as the board explains its decision as to what it's doing, then you apply normal abuse of discretion review to the board. Here, that happened in spades because the board explained it makes no sense to rely on the ALJ's justification that remand would allow for development of joint employer law when they have a rulemaking which wasn't initiated at the time of the ALJ's decision, but had been initiated since, and is now, in fact, a final rule. There's an interesting point here. The board, I understand, takes the position. Put aside the rulemaking in the future. We do not believe that the ALJ's view of joint employer is correct. If that were the basis, that would be adequate in another case? The trouble with the rulemaking, that deals with the future. Whereas, the question before the board is, or before the general counsel, is whether there was a violation of law, which is retroactive, which is past. And we've just dealt with cases in which the board agencies improperly look to rulemaking to answer present adjudication. So, although the important point is the board did not believe the ALJ's view of joint employer was correct under existing law. Correct. The board explained in its opinion that unlike the ALJ's view of it, it was not a slam dunk that they were going to prevail, that the charging parties were going to prevail on joint employer law. In fact, joint employer law had been amassed. And in fact, McDonald's, despite many cases in all sorts of different forums, has never been held to be a joint employer. The board pointed that out. It pointed all of that out and said, in light of that, this settlement is very reasonable. It provides the actual victims of the alleged violations. Every employee, all 181 violations fully redressed, 100% compensation. They would not have received a cent more. A cent more, even if this had gone on for years, they'd receive full judgments from the board on appeal affirmed, not a cent more. Under that context, the board said, this is a very reasonable settlement. The only aspect of the settlement was the joint employer. Now, I'll go quickly to your jurisdictional point. Yes. You're generally correct when we review a board, not an individual member's position. We've said that in a recent opinion last term for a service transportation board. However, if it was determined that one of the board members had taken a bribe or had financial interest in the case, wouldn't that be challenged on due process grounds? Yes, Your Honor. In that case, I would not have my jurisdictional argument anymore. You don't have your jurisdictional argument. You would say you can't do that under arbitration. You have to bring a constitutional claim on violation of due process. Exactly. If, in fact, you had a case where, as your hypothetical states, it was a bribery claim, I would expect the other side would have brought a challenge that says this violates due process. There's actual taint, actual prejudice. Due process violation, give me a release. They have not made those arguments. Next question, I want to be very quick on this. This government-wide rule on recusals. Yes, Your Honor. Why is that binding on the NLRB? Perhaps that's a question better given to agency counsel. They have taken the view, Your Honor, that there are two sources of binding ethics obligations. The first source is the Executive Order Ethics Pledge, which, again, their only argument under that is directly and substantially related. We know that directly and substantially related is defined in the Executive Order to mean that you are a party or represent a party. All right, the next point. Can I just ask here, just as a follow-up, counsel? I didn't read the board's brief to suggest it wasn't bound. Now, whether or not it's Judge Silverman's question suggests maybe it isn't, but that was never challenged by the board, was it? It simply said that it had no authority to review the decision because it was an individual decision. I agree, I agree. I was just curious about the point. I just want to be clear about that, that the board has never argued that it doesn't apply. I understand. I understand. I'm just curious. Now, will you do take the position that any violation of your rules would be equivalent to a violation of due process? Any violation of the board's rules? Right. I would not answer yes to that question if I were the board, but if you're asking me as McDonald's, I don't think that would be because due process, and there's jurisprudence on this, the standard is different. You have to show like actual, it's a heightened standard, right? The rule, you may be a violation of the letter of the rule, but that doesn't mean that you haven't gotten a fair shake. That may be an appearance concern. It may be... I think you're right. I think you're right. And just to square the circle as to why you're asking these, perhaps, is they have not made any of those other bucket of arguments that would fall into the due process camp of actual bias, bribery, actual taint, and that's why we haven't addressed them. If they had, they would be meritless. Well, counsel, one of the things in reading last term's decision, I thought, well, how did that three-judge panel have authority to overrule all of our previous cases on what the standard is about due process? That a litigant is entitled to an independent decision maker. You didn't need to address that because you weren't arguing it, but just Judge Silverman's question. Right. Your Honor, just to be clear, they have not made any sort of due process or other sort of argument. Their arguments on recusal are limited to the two regulations that we've talked about, the executive order and the CFR regulation, and it is now undisputed, and obviously you can ask Mr. West to confirm that, that there is no dispute that Littler-Mendelson is neither a party nor represents a party. That is a requirement under either the executive order or the federal regulations to get recusal. They do not satisfy that requirement. So even if this court has jurisdiction and they've properly preserved it and nodded all their eyes and crossed their teeth and you issue a merit, it's not even a close call, and it's definitely not an abuse of discretion on behalf of Member Emanuel or the board for him not to be recused in this case. All right. Anything further? Oh. Anything further from my colleagues? No, thank you. Thank you, counsel. I'll hear from counsel for petitioners. Thank you, Your Honor, and I have three points that I would like to make, and I'll try to be really brief on all three of them. First of all, as to the argument that both counsel made, that the settlement accomplishes most of what the litigation would have done, that people could not have gotten a penny more, that's correct with respect to the 20 individuals who had been fired or had their work time shortened or things like that, but it's a really important principle that the board has often repeated, that this court has often repeated, that the board is to function, but the board's function is to be performed in the public interest and not solely in the vindication of individual rights. And I would refer you again to Judge Edwards' decision in the oil, chemical, and atomic workers case, where he, after quoting that principle, he says, you know, in a footnote, really what our role is in reviewing the board's decision to accept the settlement, our role is really not, unlike that of a district court in reviewing a class action settlement, in that it's not sufficient to determine that the interests of the individual named plaintiffs have been taken care of. There's a much larger issue at stake. Well, isn't it the general counsel who's supposed to represent the public? He is, and if he doesn't, this court is there to remedy the situation, I would think. And that's our submission, Judge Silberman, that is, he did not represent the public by capitulating to McDonald on the critical issue in this case. There was mention, my second point, that the board's rulemaking doesn't, the board's rulemaking is going to resolve everything because you'll have all these issues that are coming up in this case resolved through the rulemaking. That's not at all correct. The rulemaking is on the general joint employer standard. That's true, but it does not go in at all specifically to the context of franchise or franchisee relationships. And here, on that particular point, you had the ALJ making a record over the course of three years going specifically to the nature of the relationships between McDonald's and its franchisees. And what the general counsel did is simply threw that all away, all of that effort, and capitulated on that issue. And finally, Judge Silberman, in response to your point that there had been no determination, that the ALJ, the general counsel disagreed with the ALJ's determination about joint employer, that's not quite correct because, in fact, there had been no determination made by the ALJ. What she ruled on was simply whether the settlement was reasonable, and had that not been overruled by the board, then she would have had the opportunity to take the evidence that had been assembled over the course of three years and apply the joint employer law as it existed at the time, whether under Browning-Ferris or under the board's new rulemaking, and apply it to the facts of the case that had been assembled through this very arduous and lengthy hearing. And what the board did, or the general counsel did, approved by the board, it foreclosed any possibility of doing that and addressing that point on the basis of the record that had been assembled. All right. Anything further from my colleagues? No. All right. Thank you, counsel. We will take the case under advisement.
judges: Rogers, Rao, Silberman